IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MALENA SCHROEDER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 20 C 6321 |
| BOARD OF EDUCATION FOR COMMUNITY CONSOLIDATED SCHOOL DISTRICT # 21, DIANA O'DONNELL, LYNN GLICKMAN and LYNNE DUFFY, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Malena Schroeder has sued her former employer, the Board of Education of Community Consolidated School District #21 (the Board), and her individual supervisors for employment discrimination and violations of various federal and state civil rights laws. In an earlier oral ruling, the Court dismissed three of the claims in Schroeder's complaint. The remaining claims allege (1) ethnicity and national origin discrimination in violation of Title VII, 42 U.S.C. § 2000(e), the Illinois Civil Rights Act (ICRA), 740 ILCS § 23/5(a), 42 U.S.C. § 1981, and 42 U.S.C. § 1983 (counts one, two, four and five); (2) age discrimination in violation of the Age Discrimination Employment Act (ADEA), 29 U.S.C. § 623(a) (count three); and (3) disability discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, and section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) (counts six and seven). The defendants have

moved for summary judgment on all of Schroeder's remaining claims. For the reasons below, the Court denies the motion on the Title VII, ADEA, and section 1981 claims but otherwise grants summary judgment in favor of the defendants.

## Background

The following facts are undisputed except where otherwise noted. The Board is a local government entity that operates the school district pursuant to Illinois law. Schroeder was employed by the Board as a probationary bilingual kindergarten teacher at Kilmer Elementary School from August 2014 to June 2017. Schroeder is of Hispanic and specifically Cuban descent, and she was fifty-two years old when she began working at the school district. During Schroeder's employment, Diana O'Donnell, Lynn Glickman, and Lynne Duffy supervised and evaluated her. O'Donnell was the principal at Kilmer, Glickman was the Assistant Superintendent of Human Resources for the district, and Duffy was the Director of English Language Learning.

Probationary teachers like Schroeder are at-will employees of the Board, which decides whether to renew their employment at the end of each academic year. The teacher's supervisors must conduct an annual evaluation and rate the teacher's performance as either "unsatisfactory," "needs improvement," "proficient," or "excellent" in specific domains and for overall performance. If a probationary teacher is employed for four consecutive years and receives an overall rating of "proficient" on both her most recent annual evaluation and her evaluation in her second or third year, she may acquire tenure after her fourth year. A "proficient" rating is no guarantee of tenure or continued employment as a probationary teacher, however, as the Board has the discretion to not renew a probationary teacher so long as it provides sufficient notice.

105 ILCS 5/24-11.

During Schroeder's three years, she received a "proficient" overall rating on all of her annual evaluations. Her final evaluation included a rating value of 2.895 on a five-point scale, and she was rated as "needs improvement" in several domains on each evaluation. Schroeder's supervisors conducted twelve observations or evaluations of her teaching. Observations in September 2014, October 2014, and October 2015 noted performance issues under the "Concerns Deemed Significant" category, which the Board describes as areas requiring immediate improvement. On each of those evaluations, the "Concerns Deemed Significant" mentioned the need for more student interaction and less "teacher talk" or prompting by the teacher. None of Schroeder's observations after October 2015 contained any "Concerns Deemed Significant," but all of her observations and evaluations included feedback under "Target Areas of Growth." Of the four observations conducted after October 2015, two mentioned the need for more student engagement and less prompting by Schroeder under "Target Areas of Growth."

Schroeder's last annual evaluation directed her to continue to "use the school district's curriculum," help students be "self-directed teamers and leaders," and "maintain student engagement throughout the lesson using peer to peer interaction." Defs.' Mem. of Law in Supp. Of Mot. for Summ. J., Ex. I-6, Final Performance Rating (dkt. no. 36). Her supervisors noted similar concerns in their affidavits submitted in support of the motion for summary judgment: Glickman stated that she "did not demonstrate the growth expected of a probationary teacher," Duffy stated that she "did not demonstrate the growth and ability necessary to warrant attainment of tenure," and

3

O'Donnell stated that "in [Schroeder's] third year, we should have seen more growth." *Id.*, Exs. G (Affidavit of Lynn Glickman) ¶ 27, H (Affidavit of Lynne Duffy) ¶ 40, I (Affidavit of Diana O'Donnell) ¶ 26 (dkt. no. 36). O'Donnell also stated that "[Schroeder] consistently received clear feedback on these issues and how to improve but did not act on it. She was not responding to the feedback." *Id.*, Ex. I ¶ 26 (dkt. no. 36).

Other probationary teachers at Kilmer were also evaluated by a team of administrators that included O'Donnell. The parties dispute the accuracy of Schroeder's exhibits showing that none of the other Kilmer teachers are Hispanic or Cuban and at most two were under the age of forty, but there is no other evidence on this point. On their 2016-17 evaluations, all the probationary teachers at Kilmer received a "proficient" or "needs improvement" overall rating on their annual evaluations. One probationary teacher, "PT 4," was rated "proficient" with a rating value of 2.895, and she was directed to "form self-directed learners" and "increase student engagement by providing more authentic opportunities." Pl.'s Resp., Ex. 14, Kilmer Prob. Tchr No. 4 (dkt. no. 43-4). Another probationary teacher, "PT 5," was also rated "proficient" with a rating value of 2.835, and she was urged to "continue to learn about student curriculum," provide ways for "students to become more self-directed and independent," and create "more opportunities for discussion in group." *Id.*, Kilmer Prob. Tchr No. 5 (dkt. no. 43-4).

O'Donnell, Glickman, and Duffy met in January 2017 and decided by February 10 not to renew Schroeder. Defendants state that Schroeder was not renewed because "[s]he did not show sufficient growth and her performance needed improvement in numerous areas." Defs.' Mem. of Law in Supp. of Mot. for Summ. J. at 11 (dkt. no. 35). Schroeder was the only probationary teacher at Kilmer who was not recommended for

renewal that year.

On February 15, 2017, Schroeder informed O'Donnell that she needed to take two days off for double foot surgery. The parties dispute whether Schroeder had previously registered her days off in the district's attendance tracking system in January 2017, whether O'Donnell and Glickman knew of Schroeder's foot surgery prior to February 15, and whether O'Donnell responded by reminding Schroeder that she would be considered for tenure the next school year. On February 17, Schroeder had her foot surgery and was absent for two days.

On February 23, 2017, O'Donnell and Duffy met with Schroeder to discuss her 2016-17 annual evaluation. They informed her that she would not be renewed for the next school year. Approximately one month later, Schroeder received a letter from the Board confirming her non-renewal.

In April 2017, Schroeder requested leave under the Family and Medical Leave Act (FMLA) for a second foot surgery. She took FMLA leave for most of the month of May. Schroeder's last day of employment was June 2, 2017.

On August 3, 2017, Schroeder obtained counsel and filed a charge with the Equal Employment Opportunity Commission (EEOC) and Illinois Department of Human Rights (IDHR) alleging ethnicity, national origin, and age discrimination. On March 9, 2018, Schroeder filed a second charge with the EEOC and IDHR alleging disability discrimination. In August 2020, the EEOC issued a right-to-sue letter regarding her ethnicity, national origin, and age discrimination charge. Schroeder filed this lawsuit in October 2020, within ninety days of receiving her right-to-sue letter. As indicated earlier, Schroeder asserts claims against the Board based on violations of Title VII

(count 1), the ICRA (count 2), the ADEA (count 3), section 1981 (count 4), section 1983 (count 5), the ADA (count 6), and the Rehabilitation Act (count 7). She has also named O'Donnell, Glickman, and Duffy as defendants, presumably on the section 1983 claim, though the complaint does not make that particularly clear.[1]

## Discussion

To succeed on a motion for summary judgment, the Board must show that "there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When deciding a summary judgment motion, courts must "construe all inferences in favor of the party against whom the motion under consideration is made." *Cremation Soc'y of Ill., Inc. v. Int'l Bhd. of Teamsters Local 727*, 869 F.3d 610, 616 (7th Cir. 2017) (citation omitted). Although "the mere existence of *some* alleged factual dispute between the parties" is insufficient to preclude summary judgment, courts should apply the standard with special scrutiny to employment discrimination cases, which often turn on the issues of intent and credibility. *See Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000) (emphasis in original) (quoting *Anderson*, 477 U.S. at 247).

---

[1] [1] The employer (the Board) is the only proper defendant on Schroeder's claims under Title VII, the ADEA, the ADA, the Rehabilitation Act, and the ICRA. *See Sandefur v. Dart*, 973 F.3d 1145, 1156 (7th Cir. 2020) (ADA); *Silk v. City of Chicago*, 194 F.3d 788, 797 n.5 (7th Cir. 1999) (Title VII & ADEA); *Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 644 (7th Cir. 2015) (Rehabilitation Act); 740 Ill. Comp. Stat. 23/5(a) (applying ICRA's prohibitions to "unit[s] of State, county, [and] local government").

A. Title VII, § 1981 and ADEA Claims

In counts 1 and 4 of the complaint, Schroeder alleges that the Board violated Title VII and section 1981 by not renewing her employment because of her Hispanic ethnicity and Cuban national origin. 42 U.S.C. § 2000e-2(a); 42 U.S.C. § 1981.[2] In count 3, she contends that her non-renewal was also because of her age, in violation of the ADEA. 29 U.S.C. § 623(a). The ADEA "prohibits discrimination against workers aged 40 years or older," and "age discrimination claims require a private-sector employee to prove that age was the but-for cause of the adverse employment action." *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022).

The same analytical framework applies to Title VII, section 1981, and ADEA claims, so the Court considers these claims together. *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 n.3 (7th Cir. 2009) ("We apply the same analytical framework to employment discrimination cases whether they are brought under the ADEA or Title VII."); *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007) ("We generally have applied the same prima facie requirements to both Title VII and § 1981 discrimination claims."). One method of proving employment discrimination is through the *McDonnell Douglas* burden-shifting framework. *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (citation omitted)*; see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this approach, the plaintiff must first establish a prima

---

[2] The four-year catch-all statute of limitations codified in 28 U.S.C. § 1658 applies to section 1981 claims that are "premised on conduct which took place after the formation of [the plaintiff]'s employment contract." *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 269 (7th Cir. 2004). Schroeder's claim is therefore timely, as she filed her claim within four years of learning of her termination, and the Board's decision not to renew her employment necessarily took place after her employment began.

facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff makes such a showing, the burden shifts to the employer to provide a "legitimate, nondiscriminatory reason" for its actions. *Id.* Once the employer does so, the burden shifts back to the plaintiff to present evidence that the stated reason is a pretext for discrimination. *Id.* at 804.

### 1. Prima facie case

To establish a *prima facie* case of discrimination, the plaintiff must show that: (1) she is a member of a protected class, (2) her performance met the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) a similarly situated individual outside of the protected class received more favorable treatment. *Khowaja v. Sessions*, 893 F.3d 1010, 1014-15 (7th Cir. 2018). The parties do not dispute that Schroeder is a member of a protected class because of her ethnicity, national origin, and age, and they likewise do not dispute that her non-renewal was an adverse employment action. Accordingly, the Court will focus on the second and fourth elements of the *prima facie* case.

#### a. Legitimate expectations

The Board contends that Schroeder failed to meet its legitimate expectations because she did not demonstrate sufficient growth and improvement over the course of her employment. In response, Schroeder argues that this reason is a pretext for unlawful discrimination. When an employee contends that the employer's stated reason is pretextual, "the analysis of the legitimate expectations inquiry merges with the pretext analysis." *Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1002 (7th Cir. 2013). Consequently, the Court discusses both together in the pretext section below.

### b. Treatment of similarly situated employees

Schroeder identifies the other probationary teachers at Kilmer as similarly situated individuals, and she argues that she was treated differently because none of the other teachers were terminated. A court must consider "all the relevant factors" when determining whether employees are directly comparable, including "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 532 (7th Cir. 2003). The comparators "need not be identical in every conceivable way." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). "So long as the distinctions between the plaintiff and the proposed comparators are not 'so significant that they render the comparison effectively useless,' the similarly-situated requirement is satisfied." *Id.*

Because the Board claims that Schroeder failed to demonstrate sufficient growth and improvement, the proper comparators are probationary employees who also failed to meet those same expectations. Schroeder is correct that teachers at Kilmer are a better comparator group than teachers at other schools in the district, as she and the other Kilmer teachers were all subordinate to and evaluated by O'Donnell. Thus, the question is whether a reasonable jury could find that any of the other probationary teachers at Kilmer similarly failed to grow and improve enough to meet their supervisors' expectations.

There is a genuine factual dispute on this point. The Board contends that

9

Schroeder's lack of growth and improvement is corroborated by her evaluations, many of which noted the need for more student engagement and less prompting by the teacher. Schroeder's evaluations support this argument, but there are also notable similarities between her annual evaluations and those of two teachers who were renewed, PT 4 and PT 5. All three teachers were rated "proficient," and they received similar rating values—Schroeder and PT 4 had identical rating values, and PT 5's rating value was slightly lower. Some of the feedback under "Target Areas for Growth" also contained near-identical language: all three teachers received comments about developing "self-directed learners" and maintaining or increasing student engagement, and both Schroeder's and PT 5's evaluations also discussed a need to continue using the school curriculum and encouraging group or peer-to-peer interaction. But unlike Schroeder, both PT 4 and PT 5 were renewed.

The Board does not dispute the contents of the other teachers' evaluations but instead argues that Schroeder's claim fails because one of the Kilmer teachers who was renewed was also over the age of forty. This argument is flawed for three reasons. First, it suggests that an employer is entitled to summary judgment unless it discriminates against everyone in the protected class, which is not the law. *Filar v. Board of Educ. of City of Chicago*, 526 F.3d 1054, 1061 (7th Cir. 2008) ("All things being equal, if an employer takes an action against *one* employee in a protected class but not *another* outside that class, one can infer discrimination.") (emphasis added) (internal citations omitted). Second, Schroeder's evidence is inconsistent regarding the other Kilmer teachers' exact ages, but it consistently shows that PT 4 is under the age of forty. Third, even if the Board's argument were supported by the law or the facts, it still fails to

10

address the Title VII claim. Schroeder's evidence shows that none of the other Kilmer teachers were Hispanic, and although the Board disputes the credibility of that evidence on other points, nothing in the record suggests that any of the other probationary teachers at Kilmer were Hispanic or Cuban

As a result, there is a genuine factual dispute regarding whether the Board treated PT 4 and PT 5—both of whom were not Hispanic and at least one of whom was under the age of forty—better than it treated Schroeder. Because a reasonable jury could find that there was better treatment of one or more similarly situated employees outside of the protected classes at issue, this question must be decided after a trial.

### 2. Pretext

The Board has offered a legitimate, non-discriminatory reason for not renewing Schroeder—it contends that she did not demonstrate sufficient growth or improvement to meet its legitimate expectations. As the Court has noted, this merges with one element of Schroeder's prima facie case, and thus the Court considers the two points together. The pretext inquiry involves determining whether the employer's reason for termination was "the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006).

In this case, the Board argues that its legitimate expectations included a certain level of annual growth and progress before the probationary teacher would be granted tenure in her fourth year. This is reflected in Schroeder's supervisors' affidavits, specifically Duffy's comment that Schroeder did not demonstrate the necessary growth to warrant tenure and O'Donnell's statements that she expected to see more growth in

11

Schroeder's third year. Though Schroeder argues that she was meeting expectations despite this feedback, she does not contend that her supervisors' affidavits are, in this regard, contradicted or undercut by their depositions or any other evidence. The Court concludes that there is no genuine factual dispute on this point.

Based on the available evidence, it would be quite difficult for a reasonable jury to find that Schroeder satisfied the Board's legitimate expectation of growth by a probationary teacher. The observations and evaluations corroborate the individual defendants' affidavits and depositions, as they all indicate that Schroeder struggled with insufficient student engagement and too much teacher prompting. Schroeder argues that the evaluations imply she was showing improvement for two main reasons: her supervisors used the word "continue" in some of her feedback, and there were no comments stating in so many words that she failed to demonstrate growth. The Court "will not, however, draw inferences that are supported by nothing more than 'speculation or conjecture,'" *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012) (citation omitted), and that is what Schroeder's argument on this point amounts to. The repeated mentions of the same concerns in the observations and evaluations make it clear that this was a consistent problem that was identified by Schroeder's evaluators.

But even if Schroeder did not meet the Board's legitimate expectations, her claims can still survive summary judgment if other employees who failed to meet those same expectations were treated better. An employee may establish pretext by "providing evidence that a similarly situated employee outside her protected class received more favorable treatment." *Coleman*, 667 F.3d at 841.

As discussed in the comparators section of this opinion, Schroeder's annual evaluation closely resembled those of PT 4 and PT 5 in the overall rating, the rating values, and the substantive contents of their feedback. Given the similarity in the three employees' performance, a reasonable jury could find that if Schroeder failed to meet the Board's legitimate expectations with regards to growth, then so did these two similarly rated teachers. Yet PT 4 and PT 5—both of whom were outside at least one of Schroeder's protected classes (race/national origin and age)—were renewed and Schroeder was not. The Board has not explained this disparity in outcomes, and in any event that is a matter for a jury to decide. The differential treatment is enough to create a genuine factual dispute regarding whether the Board's stated reason for not renewing her was pretextual. The Board is not entitled to summary judgment on Schroeder's Title VII and ADEA claims.

**B.     ADA, ICRA, § 1983, and Rehabilitation Act Claims**

Although Schroeder's Title VII and ADEA claims survive summary judgment, her other claims fail because they are untimely and there is no basis for equitable tolling.

**1.     Timeliness**

**a.     ADA**

A plaintiff must file a charge of discrimination within 300 days of an alleged act of discrimination, or she is barred from suing on the alleged act. *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004) (citing 42 U.S.C. § 2000e-5(e)(1), *incorporated by* 42 U.S.C. § 12117(a)). The Board argues that Schroeder's EEOC charge alleging disability discrimination is untimely because she filed it in March 2018, more than 300 days after she learned of her non-renewal on February 23, 2017.

Schroeder does not dispute that she filed her disability discrimination charge outside of the 300-day period. She contends that her ADA claim is timely because her March 2018 EEOC charge relates back to a timely charge of national origin/race discrimination that she filed in August 2017.

EEOC regulations state that an amendment can relate back to the date of an earlier charge if it "cures technical defects or omissions" or "alleg[es] additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge." 29 C.F.R. § 1601.12(b). In contrast, "an untimely amendment that alleges an entirely new theory of recovery does not relate back to a timely filed original charge." *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 575 (7th Cir. 1998). Schroeder's charge alleging disability discrimination does not relate back because, like the plaintiff in *Fairchild*, she filed an initial charge that "contain[ed] no allegation of disability discrimination and include[d] no facts that would support such a conclusion absent its direct allegation." *Id.*

Schroeder also argues that the EEOC found her ADA claim to be timely because it did not check the box on its Dismissal and Notice of Rights form indicating that her ADA claim was untimely, and that the Court should "honor that decision." Pl.'s Resp. at 4. But "Congress rejected a proposal to provide only deferential judicial review to EEOC findings, and chose instead to give the parties a right to de novo review by district courts of the merits of charging parties' discrimination claims." *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 732 (7th Cir. 2011), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016) (internal quotations omitted). Because Schroeder filed the disability discrimination charge after

14

the 300-day deadline and it cannot relate back to her earlier charge, there is no basis for the Court to find that her ADA claim is timely. Schroeder's argument that the Court should follow *Fort Bend County v. Davis*, 139 S. Ct. 1843 (2019), also fails because that case concerns whether the charge-filing requirement is jurisdictional, which is beside the point here.

    b.  **ICRA, § 1983, and Rehabilitation Act**

Schroeder's claims under the ICRA, 42 U.S.C. § 1983, and the Rehabilitation Act are all time-barred. The statute of limitations for each of these claims is two years. *See* 740 ILCS 23/5(b) (any suit alleging an ICRA violation "must be brought not later than 2 years after the violation"); *Ashafa v. City of Chicago*, 146 F.3d 459, 462 (7th Cir.1998) (statute of limitations for § 1983 claims in Illinois is two years); *Conley v. Village of Bedford Park*, 215 F.3d 703, 710 n.5 (7th Cir. 2000) (statute of limitations is two years for claims under section 504 of the Rehabilitation Act).

Schroeder learned of her non-renewal in February 2017, and her employment ended in June of that year, yet she waited more than three years before bringing these claims in October 2020. She contends that the delay was because she was waiting on the EEOC to issue a right-to-sue letter, but all of these statutes are distinct from Title VII and the ADA, and none of them require a plaintiff to file a charge with the EEOC. Schroeder's response is that her ICRA, section 1981, and section 1983 claims are timely because they "encompass the same concepts of law that apply to Title VII claims . . . but represent different legal theories." Pl. Resp. at 3. Although Schroeder's section 1981 claim is timely for reasons discussed in Part A, she offers no legal basis or further explanation for the apparent contention that her untimely claims can piggyback on her

15

timely claims. The Court finds that Schroeder has forfeited this argument regarding the timeliness of these claims. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived").

### 2. Equitable tolling

Schroeder also contends that even if her claims were untimely, the Court should apply equitable tolling to excuse her delay. Equitable tolling is warranted "only if a reasonable person in [the plaintiff's] position would not have been 'aware of the possibility of a claim of discrimination' at the time of the adverse employment action— here the tenure decision." *Haynes v. Indiana Univ.*, 902 F.3d 724, 731 (7th Cir. 2018) (internal citations omitted). Furthermore, "even if this standard is satisfied, [the court] will not grant 'an automatic extension of indefinite duration.' . . . Instead, tolling is appropriate only for a length of time within which it would have been reasonable to file a complaint," *id.* (internal citations omitted), and as relevant here, a plaintiff can file an administrative charge "within days, and at most weeks," of discovering a possible discrimination claim. *Thelan v. Marc's Big Boy Corp.*, 64 F. 3d 264, 268 (7th Cir. 1995).

Schroeder does not articulate why her case warrants equitable tolling. Regarding her ADA claim, she fails to explain what prevented her from either filing the second EEOC charge on time or including facts concerning her disability in her first charge. She was represented by an attorney who prepared her initial charge, and she knew at the time of her first filing all the facts about her foot surgery that she alleged in her second charge. Her argument for tolling on the other claims is that she was waiting for an EEOC right-to-sue letter, but because the statutes at issue here have no such

16

requirement, Schroeder's misunderstanding of the law while she was represented by counsel is not a basis to equitably toll the statute of limitations for these claims.

## Conclusion

For the foregoing reasons, the Court grants summary judgment in favor of the defendants on count 2 and 5 through 9 of plaintiff's complaint but denies the Board's motion for summary judgment [dkt. no. 34] on counts 1, 3, and 4, plaintiff's Title VII, ADEA, and section 1981 claims. The case is set for a telephonic status hearing on September 8, 2022 at 9:05 a.m. for the purpose of setting a trial date and discussing the possibility of settlement. The following call-in number will be used: 888-684-8852, access code 746-1053.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 1, 2022